UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) | |
| Plaintiff, | ) ) | Crim. No. 5:23-cr-00092-GFVT-HAI |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| AARON R. SHANKS, | ) ) | **&** |
| Defendant. | ) ) ) | **ORDER** |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is before the Court on several motions filed by Defendant Aaron R. Shanks, both of which pertain to his criminal sentence.  First, Mr. Shanks filed a Motion to Correct Time Served, regarding the accuracy of his sentence computation by the Bureau of Prisons. [R. 52.] Second, Mr. Shanks filed a Motion to Reduce Sentence, nominally pursuant to 18 U.S.C. 3582(c)(1)(B). [R. 54.]  The United States has provided a response to each motion, which are now ripe for judicial review.  For the reasons that follow, Mr. Shanks's Motions **[R. 52; R. 54]** will be **DENIED**.

**I**

On January 18, 2024, Defendant Shanks entered a plea of guilty before U.S. Magistrate Judge Matthew A. Stinnett as to Counts One, Two, and Three of the Indictment.  Counts One and Two charged Shanks with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  Count Three charged Shanks with possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d).  The undersigned adopted Judge Stinnett's recommended disposition and order on February 6, 2026, and Shanks was adjudged guilty of Counts One, Two,

and Three.  The undersigned sentenced Shanks to sixty months each on Counts One, Two, and Three to run concurrently, for a total term of sixty months of imprisonment.

## II

At the outset, the Court must first address some latent ambiguity present in the text of Shanks's motions.  As the United States points out, Shanks purports to bring his motion pursuant to 18 U.S.C. § 3582(c)(1)(B), but without any further elaboration.  Under this catch-all provision, a court may modify a defendant's sentence if "otherwise permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."  Shanks presents no evidence to suggest that his sentence was the biproduct of "arithmetical, technical, or other clear error," as required by Rule 35(a).  Consequently, because the balance of Rule 35 pertains only to motions by the United States, Shanks's efforts to modify his sentence must be by virtue of some federal statute. See Fed. R. Crim. P. 35.  Yet, Shanks cites no particular statute under which his sentence should be modified.  As written, then, there is simply nothing to latch onto to facilitate a legal analysis.

In interpreting and responding to this open-ended motion, the Court will instead construe Shanks's motion both as a request for modification under 18 U.S.C. § 3582(c)(1)(A), which prescribes a multi-step analysis, and as a request for modification under 18 U.S.C. § 3582(c)(2), which concerns subsequent modifications to the applicable Sentencing Guidelines.  Under either analysis, however, Shanks's request fails.

## A

"[A] judgment of conviction that includes [] a sentence [of imprisonment] constitutes a final judgment," and generally a "court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(b)-(c).; *Dillon v. United States*, 560 U.S. 817, 824 (2010) ("A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and

may not be modified by a district court except in limited circumstances").  A common example of such a limited circumstance is referred to a "compassionate release," whereby a district court can modify a sentence if it makes three key findings: (1) "extraordinary and compelling reasons" suggest a reduction is appropriate; (2) a reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the reduction is supported by a re-examination of the § 3553(a) factors.  18 U.S.C. § 3582(c)(1)(A)(i).  However, before an inmate may be entitled to a review for compassionate release, he must first exhaust his administrative remedies within the Bureau of Prisons.  *Id*.  Thus, evaluation of a motion for a sentence modification under § 3582(c)(1)(A) consists of a three-step analysis, which the Court will undertake.

**1**

A federal inmate may only file a motion for compassionate release after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [inmate's] behalf," or after "the lapse of 30 days from the receipt of such request by the warden of the [prisoner]'s facility, whichever is earlier."  By its very terms, this represents a mandatory, congressionally imposed, claims-processing rule.  *Ross v. Blake*, 578 U.S. 632, 639 (holding that when Congress imposes mandatory language in a claims-processing rule, "a court may not excuse a failure to exhaust," even to account for "special circumstances"); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) ("Nothing in 3582(c)(1)(A) suggests the possibility of judge-made exceptions).  "If properly invoked, mandatory claim-processing rules must be enforced, but they may be waived or forfeited." *Hamer v. Neighborhood Hous. Servs.*, 583 U.S. 17, 20 (citing *Manrique v. United States*, 581 U.S. 116, 121 (2017)); *Eberhart v. United States*,

3

546 U.S. 12, 19 (2005) (per curiam) ("[C]laim-processing rules [ensure] relief to a party properly raising them, but do not compel the same results if the party forfeits them").

Here, the United States has properly invoked the mandatory claim-processing rule, and thus, its requirement is neither waived nor forfeited. And, the evidence demonstrates that Shanks has not filed a request for compassionate release with the warden of his facility. Consequently, he falls squarely outside of both exhaustion provisions.

**2**

As the Sixth Circuit has made clear, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). The first prerequisite – exhaustion of administrative remedies – is lacking here. Nevertheless, and in the interest of completeness, the Court will briefly address the remaining components of the analysis.

**a**

Next, the Court turns to the question of whether "extraordinary and compelling reasons" are present to suggest that a reduction of Shanks's sentence is warranted. USSG § 1B1.13 constitutes the policy statement of the Commission and seeks to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." USSG § 1B1.13 (2022) commentary background note. Extraordinary and compelling reasons include (1) medical circumstances of the Defendant, (2) age of the defendant, (3) family circumstances of the defendant, (4) whether the defendant is a victim of abuse, (5) other reasons that are similar in gravity to those described in paragraphs (1) through (4), and (6) whether the defendant has received an unusually long sentence. USSG §

4

1B1.13(b)(1)-(6).  The United States contends, upon application of the § 1B1.13 factors, that Shanks has failed to present an extraordinary and compelling circumstance to warrant a reduction in his sentence.

A quick review of each of these factors make clear that Mr. Shanks has not presented "extraordinary and compelling reasons" for reducing his sentence.  To support his request, Mr. Shanks merely asks that the Court consider his "rehabilitation, age, health, and good behavior." First, in order for age to be considered an extraordinary and compelling reason, the defendant must be at least 65 years old, experiencing age-related deterioration in physical or mental health, and have served a minimum of 75 percent of his term of imprisonment.  Shanks satisfies none of these prerequisites.  Next, while the record indicates that Mr. Shanks suffers from a variety of medical conditions for which treatment is required, he has presented no evidence to suggest that his condition has deteriorated since his sentencing.  Mr. Shanks's medical conditions were presented to the Court in his presentence report, and were considered in imposing his sentence. With respect to his rehabilitation and good behavior, the Sentencing Commission has made clear that rehabilitation alone does not constitute an extraordinary or compelling reason for purposes of the analysis.  Consequently, the Court finds that Mr. Shanks has failed to point out "extraordinary and compelling reasons" for reducing his sentence at this time.

**b**

Had the Court found that Shanks presented extraordinary or compelling reasons to grant the motion, it would still have to determine that the § 3553(a) factors support the reduction. *Bricker*, 135 F.4th at 433.  A district court may still deny relief upon consideration of the § 3553(a) factors even if the Court found that "'extraordinary and compelling' reasons would otherwise justify relief." *Ruffian*, 978 F.3d at 1008.

5

Here, the § 3553(a) factors similarly do not support a reduction. Mr. Shanks pled guilty to charges stemming from the unlawful possession of firearms, and the sale of such weapons and accoutrements to a confidential informant. Mr. Shanks has provided no evidence to suggest that the undersigned did not properly weigh the § 3553 factors at his initial sentencing. Additionally, in weighing these factors, the Court ultimately denied the United States' motion for an upward variance. Mr. Shanks's criminal history is extensive, with numerous prior drug and assault charges. Likewise, Mr. Shanks has a history of probation violations, including the instant offenses which occurred while he was on probation. The nature and circumstances of the instant offenses are serious, and Mr. Shanks's sentence was needed to provide adequate deterrence, as well as to promote respect for the law. The Court commends Ms. Shanks for his rehabilitation and good behavior while incarcerated but considered together the § 3553(a) factors do not point toward an early release.

**B**

Alternatively, we construe Shanks's motion as a Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(2). Under this provision, a district court may reconsider a sentence previously imposed "if the Sentencing Commission subsequently 'lowered' the 'sentencing range' forming the basis of the defendant's sentence. *United States v. Watkins*, 2025 U.S. App. LEXIS 1639, at *4 (6th Cir. Jan. 24, 2025) (quoting 18 U.S.C. § 3582(c)(2)). A reviewing court can reduce a defendant's sentence "consistent with applicable policy statements issued by the Sentencing Commission," provided that it also considers the 18 U.S.C. § 3553(a) sentencing factors in reaching its decision. Importantly, while a defendant may file a § 3582(c)(2) motion himself, he can also waive his right to seek a § 3582(c)(2) reduction via a plea agreement. *United States v. Clardy*, 877 F.3d 228, 229, 231 (6th Cir. 2017).

6

Again, Mr. Shanks cannot point to any amendments to the sentencing guidelines that have impacted the sentencing range used in imposing his sentence.  As the United States correctly points out, Mr. Shanks's sentence was calculated under § 2K2.1 of the 2023 Sentencing Guidelines Manual, which prescribed a base offense level of 20 based upon Mr. Shanks being both a prohibited person at the time of the offense and the offense involved a firearm described in 26 U.S.C. § 5845(a).  USSG § 2K1.1(a)(4)(B).  Mr. Shanks was given a single two-level enhancement, pursuant to USSG § 2K2.1(b)(1)(A) because the offense involved between three and seven firearms.  Additionally, Mr. Shanks's criminal history category was calculated pursuant to USSG § 4A1.2 of the same version of the Guidelines Manual.  The Court is unaware of any subsequent amendments to the guidelines which impact the calculation of Mr. Shanks's offense level, or his criminal history category.

Additionally, as the United States observes, the sole relevant provision which correlates to Shanks's unclear reference to "rehabilitation, age, health, and good behavior," is Chapter 5, Part H, of the 2023 Guidelines Manual, which permitted the Court to consider certain offender characteristics, including age, in determining whether a downward departure was appropriate.  And while this provision was removed in the 2025 version of the Guidelines Manual, its removal has no impact on Mr. Shanks's sentence calculations.  Consequently, and in the absence of any amendments to the Guidelines Manual which lowered Mr. Shanks's guideline range calculation, a motion brought under § 3582(c)(2) must also be denied.

## C

Lastly, Shanks's filed a separate motion seeking to dispute the calculation of his time in federal custody for purposes of ascertaining his release date.  More specifically, Shanks states in his *pro se* motion that he "got his time in October 2023, and y'all started my time in 2025."  In

7

other words, Shanks contends that the proper calculation of his federal sentence begins when he was delivered to federal custody on a writ of habeas corpus ad prosequendum.  In response, the United States contends that Mr. Shanks failed to satisfy his administrative remedies prior to filing this motion, and, regardless, his sentence is properly calculated with his federal sentence beginning in December 2024.

At the outset, Mr. Shanks's motion must be denied because he failed to exhaust his administrative remedies prior to the filing of this action in federal court.[1]  If a prisoner believes that his sentence is not properly computed because he has been unfairly denied credit toward the sentence imposed, he is required to pursue administrative review of that computation with the BOP prior to seeking relief in federal court. *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006); see also *United States v. Crozier*, 259 F.3d 503, 520 (6th Cir. 2001) ("The United States is correct in asserting that the power to grant credit for time served lies solely with the Attorney General and the Bureau of Prisons").  Exhaustion of administrative remedies serves two main purposes: (1) it "protects administrative agency authority," by ensuring that an agency has an opportunity to review and revise its actions before litigation is commenced, which preserves both judicial resources and administrative autonomy; and (2) it promotes efficiency because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Woodford v. Ngo*, 548 U.S. 81, 92-94 (2006); see also *Detroit Newspaper Agency v. N.L.R.B.*, 286 F.3d 391, 396 (6th Cir. 2002) ("The purpose of the exhaustion doctrine is to allow an administrative agency to perform

---

[1] Although Mr. Shanks suggests in a subsequent letter to the Court filed on March 20, 2026, that he has engaged with the warden of his facility, he presents no evidence to the Court to demonstrate that he has exhausted his administrative remedies, such as a denial letter from the Warden, for example. [R. 60.]  Consequently, the Court finds that the administrative remedies have not been exhausted.  At a minimum, it is clear that these administrative remedies were certainly not exhausted prior to the filing of the motion before this Court.

8

functions within its special competence, to make a factual record, to apply its expertise and to correct its own errors so as to moot judicial controversies") (quoting *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1092 (6th Cir. 1981)).

Here, because Shanks has failed to exhaust his administrative remedies before filing his motion, in the form of a letter, with the Court, his request must be denied on that basis alone. Mr. Shanks has presented no evidence to suggest that the has pursued his administrative remedies. Rather, evidence submitted by the United States demonstrates that Shanks had not even attempted to pursue his BOP remedies prior to filing this letter with the Court. If the BOP declines Shanks's request, he may then raise his claim through the BOP's Administrative Remedy Program. *Setser v. United States*, 566 U.S. 231, 244 (2012) (citing 28 C.F.R. § 542.10, *et seq*.). "After exhausting his administrative remedies, the defendant may then petition for a writ of habeas corpus under 28 U.S.C. § 2241, a petition which must be filed in defendant's district of confinement, rather than here, in the sentencing Court." *United States v. Mendenhall*, 2025 U.S. Dist. LEXIS 26269, at *2 (E.D. Tenn. Feb. 13, 2025) (citing *Setser*, 566 U.S. at 244).

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Shanks's Motion to Correct Time Served **[R. 52]** is **DENIED**; and

2. Defendant Shanks's Motion to Reduce Sentence **[R. 54]** is **DENIED**.

This 22nd day of April 2026.

Gregory F. Van Tatenhove
United States District Judge